UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

NREC POWER SYSTEMS, INC.             CIVIL ACTION

VERSUS                                    NO.  05-4205

MIBA BEARINGS U.S. L.L.C.             SECTION  "N" (5)

## ORDER

Presently before the Court are the following motions filed by Defendants, Miba Bearings U.S., L.L.C. ("Miba"):

(1)  Motion for Partial Summary Judgment (Rec. Doc. No. 19);

(2)  Motion in Limine Regarding Certain of Plaintiff's Claims/Damages and Plaintiff's Trial Exhibits Nos. 6, 7, and 8 (Rec. Doc. No. 40);

(3)  Motion in Limine as to Bryan Chaisson (Rec. Doc. No. 42);

(4)  Motion in Limine as to Preferred Maintenance Report (Plaintiff's Trial Exhibit 23) and Randy Aden (Rec. Doc. No. 46);

(5)  Motion in Limine (or to Strike) Regarding Plaintiff's Previously Undisclosed Witnesses and Certain Designated Exhibits (Rec. Doc. No. 50); and

Plaintiff, NREC Power Systems, Inc. ("NREC"), opposes these motions.  The Court rules on these motions as set forth herein.

**I.**      **Motion for Partial Summary Judgment** (Rec. Doc. No. 19)

Defendant argues that it is entitled to summary judgment on Plaintiff's redhibition claim because Plaintiff has failed to establish the existence of a redhibitory defect.  Defendant further

argues that several of Plaintiff's claims for damages must be dismissed.[1]  Finally, Defendant argues that Plaintiff failed to give Defendant timely notice of the redhibitory defect, and as such, Plaintiff's economic damages, if any, must be discounted by the amount exceeding Defendant's cost of repairing the defect had Defendant received timely notice of the defect.

Upon reviewing the submissions of the parties and the pertinent law, the Court finds that genuine issues of material fact exist in this matter which preclude summary judgment.  Specifically, the Court finds that issues of material fact exist as to whether the bearings in question were defective and as to whether such defect existed at the time the bearings left Defendant's possession.  Further, considering that the bearings in question had to be replaced, the Court finds that there exists at least an issue of material fact as to whether the bearings were rendered useless by the alleged defect.  Finally, the Court finds that issues of material fact exist regarding whether Plaintiff provided Defendant with timely notice of the alleged redhibitory defect.  Accordingly, Defendant's Motion for Partial Summary Judgment (Rec. Doc. No. 19) is **DENIED**.

**II.     Motion in Limine Regarding Certain of Plaintiff's Claims/Damages and Plaintiff's Trial Exhibits Nos. 6, 7, and 8** (Rec. Doc. No. 40)

As a threshold matter, Plaintiff has made it clear in its opposition that it is no longer seeking to assert claims on behalf of its sister companies and/or other entities in this action.  Rather, Plaintiff represents that "NREC is only pursuing its own damages in this litigation."  Thus, to the extent that Miba's Motion in Limine seeks a ruling that NREC is not entitled to recover alleged damages sustained by others, the motion is **GRANTED as UNOPPOSED**.

---

[1]  This particular issue is resolved by the Court's ruling on the motions in limine, as discussed in subsection II herein.  Accordingly, the Court finds that the issue of damages, as presented in the Motion for Partial Summary Judgment, is moot.

Regarding the eight categories of damages asserted by Plaintiff and discussed in Defendant's Motion in Limine, the Court rules as follows:

A.  Cost of Bearings

While the exact number of the engines Plaintiff rebuilt is disputed,[2] the parties do not dispute that Plaintiff did not rebuild all of the thirty CVRD engines.  Further, the parties do not dispute that each engine requires eight upper connecting rod bearings.  Finally, it is undisputed that the cost of each upper connecting rod bearing was $155.   Thus, the cost of the bearings per rebuilt engine is eight multiplied by $155, which equals $1,240.  Therefore, Plaintiff's maximum potential recovery is equal to $1,240 multiplied by the number of engines that Plaintiff rebuilt, i.e. either ten or eleven. Plaintiff shall be precluded from presenting evidence of any bearing cost in excess of this amount. Accordingly, the Motion in Limine is **GRANTED** as it relates to evidence of any bearing cost in excess of the amount that reflects Plaintiff's maximum potential recovery.

B.  Loss of Engines

To date, Plaintiff has failed to provide Miba with any documentary evidence demonstrating engine loss.  In its opposition, Plaintiff refers to Bryan Chaisson's report (Rec. Doc. No. 63-7). However, after examining this report, the Court finds that while Chaisson does mention "engine failures," at no point in the report does Chaisson actually say that any of Plaintiff's engines were "lost," as Plaintiff alleges.  A reading of the report as a whole indicates to the Court that when Chaisson used the phrase "engine failure" or "failed engine," he was referring to the problem that occurred inside the engine with the use of the Miba bearings, i.e., "premature wear and failure to the

---

[2]  Defendant claims that Plaintiff rebuilt only ten of the engines (nine CVRD engines and one Gulf Fleet engine), while Plaintiff claims it rebuilt eleven of the engines (ten CVRD engines and one Gulf Fleet engine).

fish back area of the upper connecting rod bearing." There is no evidence whatsoever indicating that the "failed engine" referred to in Mr. Chaisson's report  was a "lost" engine that could not be used again to the extent that Plaintiff would be entitled to receive compensation for its replacement or repair.  Accordingly, the Motion in Limine is **GRANTED** as it relates to evidence of loss of engines.

      C.  <u>Cost of Replacing Engine Parts, including Trial Exhibit 6</u>

It is undisputed that once Plaintiff experienced premature failures of some of the upper rod bearings, it elected to replace not only the upper rod bearings but also the lower rod bearings and the insert bearings in each engine.  Plaintiff contends that its "customer insisted that all of the Miba after-market bearings be replaced."  This assertion, even if true, does not convince the Court that Plaintiff complied with its obligation to mitigate its damages.  The Court agrees with Defendant that Plaintiff should not be allowed to recover either the original cost or replacement cost of undamaged engine parts.  Accordingly, the Motion in Limine is **GRANTED** as it relates to evidence of the costs of replacing the engine parts (including upper rod bearings, lower rod bearings, and insert bearings) that did not fail.

Plaintiff's Trial Exhibit 6 is the EMD invoice for the OEM (original equipment manufacture) bearings purchased by VMV.  Plaintiff agrees that the EMD invoices for the OEM bearings purchased by VMV (Trial Exhibit 6) cannot form a component of Plaintiff's damages, and it states that it is not seeking recovery for this cost.  Nevertheless, Plaintiff seeks admission of this invoice because it is "relevant to show the type and source of bearings utilized to replace the defective after-market bearings."  To the extent that the invoice is offered for this purpose rather than as an element of damages, the Court declines to exclude it.  Accordingly, the Motion in Limine is **DENIED** insofar as it relates to evidence of the cost of purchasing OEM bearings and other components utilized in

the retrofit program, including Plaintiff's Trial Exhibit 6.

      (D)  <u>Cost of Replacing Bearings, including Trial Exhibits 7 & 8</u>

      Exhibit 7 is an invoice from NREC to National Rail for replacement of bearings.  NREC was reimbursed for this sum from National Rail and concedes that it cannot seek recovery of this reimbursed sum.  The Court finds that, because Plaintiff was reimbursed by National Rail for this sum, inclusion of this invoice as evidence could only lead to confusion of the issues, and would not be useful to any damage calculation.  Accordingly, the Motion in Limine is **GRANTED** as it relates to Plaintiff's Exhibit 7.

      Exhibit 8 is an invoice from Talgo to National Rail.  Plaintiff concedes that it is not attempting to recover the cost of the Talgo invoice.  Nevertheless, Plaintiff seeks to have Trial Exhibit 8 admitted because it is "relevant in that it reflects the time and cost customary in the industry to perform the identical repairs that were being performed by NREC," along with "the typical labor and part costs."  To the extent that the Talgo invoice is offered for this purpose, the Court declines to exclude it.  Accordingly, the Motion in Limine is **DENIED** insofar as it relates to Plaintiff's Exhibit 8, the Talgo invoice.

      (E)  <u>Cost of Retrofitting Engines</u>

      Plaintiff is limited to the presentation of evidence of retrofitting the one Gulf Fleet engine that Plaintiff itself rebuilt and retrofitted with new bearings.  To the extent that Plaintiff itself paid the cost for the replacement bearings on this engine, rather than receiving the bearings from Miba at no charge, Plaintiff may present evidence of this cost.

      (F)  <u>Lost Profits and Overhead</u>

      Plaintiff has failed to come forward with any documentation of "lost profits and overhead"

damages.  Plaintiff merely states in its opposition that it seeks "recovery of its published labor rate" of $68.00 an hour, which, according to Plaintiff, consists of its cost of labor, along with employee benefits and overhead, plus profit.   The Court finds that this claim is unsupported, and the Court agrees with Defendant that there is no evidence that Plaintiff actually sustained a loss of profits that would not otherwise be compensated by an award of actual costs and expenses for performing the replacement work.  Further, Plaintiff cites to no authority, and this Court can find none, allowing a plaintiff to make a profit for performing repairs.    Accordingly, the Motion in Limine is **GRANTED** as it relates to evidence regarding lost profits and overhead.

(G)  Lost Opportunity

For the reasons stated above regarding lost profit, the Motion in Limine is **GRANTED** as it relates to evidence regarding lost opportunity.

(H)  Assignment of Claims

Plaintiff states that it is no longer alleging that the other entities (National Rail, VMV, NRE Alco) assigned their claims to NREC.  Accordingly, the Motion in Limine is **GRANTED as UNOPPOSED** as it relates to assignment.

## III.  Motion in Limine as to Bryan Chaisson (Rec. Doc. No. 42)

Defendant seeks an order precluding Plaintiff from offering expert or opinion testimony from Bryan Chaisson regarding any alleged defect in Miba's 118 replacement bearing or the cause of any alleged bearing failure.  Defendant further requests that Plaintiff and Chaisson be precluded from referencing Plaintiff's Trial Exhibit 3, the report of RSI.  Defendant contends that Chaisson's opinions lack the necessary reliability under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).  Specifically, Defendant argues that Chaisson's report lacks a

6

scientific approach to determining the cause of the bearing problem.  Further, Defendant argues that Chaisson  lacks the necessary experience or expertise in engineering and metallurgical principles to offer reliable opinion testimony.  For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

Defendant's Motion in Limine to exclude the testimony of Mr. Chaisson is **GRANTED** to the extent that Mr. Chaisson is barred from testifying as to his opinion regarding the existence of a defect in the bearings or as to the cause of any alleged defects in the bearings.  The Court finds that Mr. Chaisson's opinions regarding defects in the bearings do not satisfy the requirements of *Daubert* and its progeny.  Mr. Chaisson's opinion, according to his report, is that the basis for the bearing failures is "the change in the material and other changes that Miba may have done to the 118 after market bearing."  The deposition testimony demonstrates that the only basis for this opinion is the fact that the new style of the 118 bearings, the ones manufactured after February 1, 2005, are still working today.

The Court further finds that, after examination of Mr. Chaisson's curriculum vitae and deposition testimony, Mr. Chaisson does not possess the qualifications to deliver expert testimony regarding a "change in material and other changes" and/or any other metallurgical principles. Specifically, the Court notes that Mr. Chaisson is unaware of the type of metal that the Miba bearings consist of.  In addition, Mr. Chaisson was unable to identify the specifications that the components were checked against.  Further, he is unaware of both his company's standards and industry standards regarding the surface finish of rods.  Finally, Mr. Chaisson was unable to identify the machine that his company used to check the surface finish of rods, calling it only "a very expensive one."

The Court also finds that Mr. Chaisson cannot properly rely on the RSI report.  The deposition testimony demonstrates that Mr. Chaisson did not know the person who prepared the report or what that person's qualifications were, did not know what engine the bearing descried in the report came from, or even what the exhibits in the report portrayed.  When asked what support existed for the RSI report's conclusion that the bearing failure was due to the "lack of an overlay," Mr. Chaisson said that he did not know.

Accordingly, Mr. Chaisson will not be permitted to testify as to the existence of a defect in bearings or to the cause of any alleged defect in the bearings, nor will he be permitted to reference or to discuss his interpretation of the RSI report, as this interpretation amounts to nothing more than a lay reading.  Mr. Chaisson will, however, be permitted to testify as a fact witness regarding what he observed during his field testing of the OEM bearings.  This ruling is without prejudice to Defendant's right to object to such testimony at trial, provided that it determines such objection to be warranted.

Regarding the RSI report, because it is unclear whether Plaintiff will be able to authenticate the report through another witness, the Court declines to exclude that item of evidence at this juncture.  Accordingly, the Motion in Limine is **DENIED** as it relates to the RSI report.  This ruling is without prejudice to Defendant's right to assert an objection to the admission of the report at trial.

**IV.    Motion in Limine as to Preferred Maintenance Technologies Report (Plaintiff's Trial Exhibit 23) and Randy Aden** (Rec. Doc. No. 46)

The source of the Preferred Maintenance Technologies Report (PMT Report) is a North Dakota lawsuit by a separate party, Dakota Missouri Valley and Western Railroad ("DMVWRR"), which was voluntarily dismissed with prejudice by that plaintiff.  The circumstances of that case leading to the preparation of the PMT Report are dissimilar to the events reported by NREC.

8

DMVWRR did not experience problems with the rod and bearing until several months of operation had passed; in contrast, NREC experienced bearing failure within hours of operation.  Further, the bearings at issue in the present case are those purchased by NREC and manufactured by Miba between June 10, 2004 and February 1, 2005.  The bearings examined in the PMT Report were manufactured after February 1, 2005 (referred to as "new style" bearings), and thus are not the same as those at issue in the present case.  Further, NREC has used the new style bearings without incident since February 1, 2005.  In light of these facts, the Court finds that the PMT Report is irrelevant and should be excluded.  Accordingly, the Motion in Limine is **GRANTED** as it relates to the PMT Report.

To the extent that Mr. Aden's testimony is sought in order to authenticate the PMT Report or to otherwise discuss the bearings at issue in the DMVWRR case, such testimony from Mr. Aden is excluded and the Motion in Limine is **GRANTED**.

**V.      Motion in Limine (or to Strike) Regarding Plaintiff's Previously Undisclosed Witnesses and Certain Designated Exhibits** (Rec. Doc. No. 50)

Regarding Mr. Aden's proposed testimony, the motion is **GRANTED** as set forth above in subsection III (the Court's ruling on Defendant's Motion in Limine as to PMT Report and Randy Aden).  The Motion to Strike Mr. Aden as a witness is **DENIED** to the extent that Plaintiff seeks to offer Mr. Aden's testimony for otherwise admissible purposes.

The Motion to Strike is **GRANTED as UNOPPOSED** as it relates to Robert Loewer, as NREC does not plan on calling this witness.

The other six witnesses are employees of Miba's customers.  To the extent that these witnesses plan to offer testimony regarding other customers' experiences with Miba bearings, the Court will not exclude that testimony at this time.  Both Plaintiff and Defendant correctly point out

9

that, in a product liability case, evidence of similar accidents is admissible under certain circumstances.  Without knowing more about the matters to which these witnesses are expected to testify, such as whether there were similar accidents involving substantially similar circumstances and substantially similar components, the Court declines to strike these witnesses or exclude such testimony at this time.  Accordingly, the Motion in Limine (or to Strike) is **DENIED** as it relates to these six witnesses.  This ruling is without prejudice, however, to Defendant's right to reurge an objection regarding this evidence during trial, should Defendant determine such an objection to the particular evidence to be warranted.

New Orleans, Louisiana, this __2nd__ day of August, 2007.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**